IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOYCE J. CHALMERS,                              Case No. 6:13-cv-01282-AA
                                                        OPINION AND ORDER
            Plaintiff,

      v.

CAROLYN W. COLVIN,
Commissioner of Social
Security,

            Defendant.
_____

Alan S. Graf
208 Pine St.
Floyd, VA 24091
      Attorney for plaintiff

S. Amanda Marshall
Adrian L. Brown
Ronald K. Silver
U.S. Attorney's Office
1000 S.W. Third Ave., Suite 600
Portland, OR 97204

Gerald J. Hill
Social Security Administration
Office of General Counsel
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104
      Attorneys for defendant

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Joyce Chalmers brings this action pursuant to the Social Security Act ("Act") to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Title II disability insurance benefits ("DIB"). For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

## PROCEDURAL BACKGROUND

In June 2010, plaintiff protectively applied for DIB. Tr. 12, 137-39. Her application was denied initially and upon reconsideration. Tr. 12, 71-80, 102-07, 137-44. On February 23, 2012, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 28-69. On March 22, 2012, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 12-21. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-3.

## STATEMENT OF FACTS

Born on December 21, 1964, plaintiff was 45 years old on the alleged onset date of disability and 48 years old at the time of the hearing. Tr. 26, 30, 71. Plaintiff graduated from high school and obtained a college level associate's degree. Tr. 31. She was previously employed as a human services specialist, medical assistant, receptionist, care provider, and office manager. Tr. 93.

Plaintiff alleges disability as of February 19, 2010, due to post-traumatic stress disorder ("PTSD"), depression, anxiety, insomnia, migraine headaches, fibromyalgia, digestive problems, and back, neck, and left wrist pain. Tr. 137, 157-58.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential

process for determining whether a person is disabled. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1502. First, the Commissioner considers whether a claimant is engaged in "substantial gainful activity." <u>Yuckert</u>, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." <u>Yuckert</u>, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." <u>Yuckert</u>, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. <u>Yuckert</u>, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national and local economy. <u>Yuckert</u>, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

### THE ALJ'S FINDINGS

At step one of the five-step sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 14. At step two, the ALJ determined that plaintiff had the following severe impairments: PTSD, anxiety disorder, fibromyalgia, status post left distal radius fracture, and major depressive disorder, in partial remission. Id. At step three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 15.

Because she did not establish disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform "light work with lifting and carrying 20 pounds occasionally and 10 pounds frequently," "frequent handling with the non-dominant hand," and standing, walking, and sitting six hours in an eight-hour workday, with normal breaks. Tr. 16. Additionally, the ALJ limited plaintiff to "unskilled work of routine, repetitive tasks with simple instructions" and "occasional contact with coworkers and the general public." Id.

At step four, the ALJ found that plaintiff could not perform her past relevant work. Tr. 19. At step five, the ALJ determined that, despite her impairments, plaintiff could perform jobs existing in significant numbers in the national and local economy, such as clerical addresser, officer helper, and credit clerk. Tr.

Page 5 - OPINION AND ORDER

20. As such, the ALJ concluded that plaintiff was not disabled under the Act. Id.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) finding her not credible; (2) failing to include all of the limitations prescribed by James M. Wahl, Ph.D., in the RFC; (3) improperly assessing the medical opinions of Heath Canfield, M.D., and Thomas McAndrew, M.D.; and (4) relying on invalid VE testimony at step five.

I.    Plaintiff's Credibility

Plaintiff asserts that the ALJ failed to articulate a clear and convincing reason, supported by substantial evidence, for rejecting her subjective symptom statements. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted). If the "ALJ's

credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

At the hearing, plaintiff testified that she is primarily unable to work due to depression. Tr. 34. This condition "never goes away," renders her unable to eat or sleep, and causes her to "isolate [herself] a lot of [the] time." Id. Plaintiff also reported anxiety, lack of attention, nightmares, fatigue, frequent "tension headaches," and physical pain in "most of [her] joints[,] neck, and shoulders." Tr. 34-37. Plaintiff stated there are a "lot of times" that she cannot do normal daily activities because she does not "have the energy." Tr. 37.

The ALJ found that plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms," but that her complaints concerning the "intensity, persistence and limiting effects of these symptoms [were] not credible" due to her failure to follow prescribed treatments and inconsistent statements, as well as the lack of corroborating objective medical evidence. Tr. 17-19.

Notably, the ALJ determined that plaintiff's failure to seek mental health counseling, pursuant to her doctors' recommendations, undermined her subjective symptom statements. Tr. 18. Failure to seek or follow medical treatment is a clear and convincing reason to reject a claimant's credibility. Burch, 400 F.3d at 681. Nevertheless, before drawing a negative inference, the ALJ must consider "any explanations that the individual may provide, or

Page 7 - OPINION AND ORDER

other information in the case record, that may explain infrequent or irregular medical visits." SSR 96-7p, available at 1996 WL 374186.

Substantial evidence supports the ALJ's conclusion, not only did plaintiff's treating physicians frequently prescribe counseling, her social worker, Gayle Goldblatt, "stated several times that she would continue to see [plaintiff] at no charge." Tr. 18-19, 336, 401, 403, 425. This evidence contradicts plaintiff's statement that she ceased treatment with Ms. Goldblatt because she "didn't have money to pay her." Tr. 37-38; see also Burch, 400 F.3d at 680 (inconsistencies in a claimant's testimony can serve as a clear and convincing basis for discrediting it). Moreover, plaintiff's most recent mental health provider, Patricia Ferguson-Wilcox, M.D., noted in May 2011 that plaintiff did "not want to continue" therapy because she felt "as stable as she has been in a long time." Tr. 420; see also Tr. 37 (plaintiff testifying at the hearing she was stable on her current medication regime and that she had not engaged in any mental health counseling "for a long time"), 390 (plaintiff reporting to Ms. Goldblatt in May 2011 that she was "carrying on with her day to day life" and "ha[d] been more energized and active, getting out more").

As the ALJ reasonably determined, the evidence of record reveals that plaintiff was suffering from a number of situational stressors, including a recent divorce from an abusive spouse, as well as strife within her immediate family, that resulted in "a short period of disability," but which "subsequently improved"

within less than twelve months. Tr. 19; see also Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999) (ALJ properly discredited the claimant's subjective testimony where medical records showed that the claimant's mental symptoms improved with the use of medication).

In addition, the ALJ found that plaintiff's credibility was impaired by her activities of daily living. Tr. 20. Daily activities may serve as a basis for discrediting a claimant where they "are transferable to a work setting" or "contradict claims of a totally debilitating impairment." Molina v. Astrue, 674 F.3d 1104, 1112-13 (9th Cir. 2012). The record before the Court demonstrates that plaintiff took "care of [her] daughter 5 days a week." Tr. 182, 438. As such, plaintiff prepared meals several times per day, transported her daughter to and from school and activities, and ensured that her daughter was clean and dressed. Tr. 178, 180, 438. Further, plaintiff attended Girl Scout meetings and church, socialized daily with a male friend and weekly with her sister and son, watched television, occasionally engaged in craft projects, took care of the family cat, managed her own funds, drove independently, and completed household chores such as shopping, cooking, and cleaning. Tr. 45, 47, 179-82, 438. These activities undermine plaintiff's hearing statements and evince an ability to perform a limited range of light work.

Thus, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements. As a result, this Court need not discuss all of

Page 9 - OPINION AND ORDER

the reasons provided by the ALJ because at least one legally sufficient reason exists. <u>Carmickle v. Comm'r, Soc. Sec. Admin.</u>, 533 F.3d 1155, 1162-63 (9th Cir. 2008). The ALJ's credibility finding is affirmed.

II.  <u>Dr. Wahl's Limitations</u>

Plaintiff argues that the ALJ failed to include all of Dr. Wahl's assessed limitations into the RFC, despite fully crediting his opinion. Specifically, plaintiff contends that the ALJ's RFC is deficient because it includes "no limitations regarding [her] inability to interact with supervisors [or] understand, remember and carry out detailed or complex instructions." Pl.'s Opening Br. 6-7.

On August 1, 2011, Dr. Wahl examined plaintiff to evaluate her mental functioning. Tr. 436-40. Dr. Wahl's assessment was based on plaintiff's self-reports and various objective tests. <u>Id.</u> The doctor diagnosed plaintiff with major depressive disorder, recurrent, moderate; PTSD; and fibromyalgia. Tr. 439. Regarding plaintiff's functional limitations, Dr. Wahl explained in his narrative report:

> [t]he combination of [plaintiff's] chronic pain and her tendency to space out (related to her PTSD) probably limits her ability to understand, remember and carry out detailed or complex instructions. I suspect her self-image is low enough that she would have difficulty responding to criticism from supervisors. Her ability to sustain attention and concentration and persist at work tasks is also likely limited by her combination of physical and psychological symptoms.

Tr. 439-40.

Based on this assessment, Dr. Wahl completed a corresponding

Page 10 - OPINION AND ORDER

check-the-box form, reflecting that plaintiff is moderately limited in her ability to understand, carry out, and remember complex instructions, and interact appropriately with supervisors and co-workers. Tr. 432-33. The doctor concluded that plaintiff "seems to be the type of person who is resigned to her depression and who accepts her symptoms as par for the course . . . [g]iven her decision not to pursue psychotherapy I believe she can be expected to display the above limitations and symptoms indefinitely." Tr. 439-40.

The ALJ credited Dr. Wahl's opinion. Tr. 16, 18. Initially, the fact that Dr. Wahl found that plaintiff had moderate limitations does not mean, as plaintiff contends, that the term "moderate" needed to appear in the RFC or that she is wholly unable to work. This is because "the term 'moderate' does not necessarily indicate a degree of limitation that must be expressly reflected in the RFC assessment [since it] does not inherently translate to a concrete functional limitation." Brink v. Astrue, 2013 WL 1785803, *5 (D.Or. Apr. 24, 2013). Instead, "[t]he dispositive inquiry is whether the ALJ's [RFC] 'is consistent with restrictions identified in the medical testimony.'" Id. (quoting Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008)).

Here, Dr. Wahl's medical testimony, on which his check-the-box assessment was based, was phrased equivocally, such that the ALJ was not required to accept it as part of the RFC. Tr. 438; see also Collum v. Colvin, 2014 WL 3778312, *4 (D.Or. July 30, 2014) ("an ALJ is not required to incorporate limitations phrased equivocally

Page 11 - OPINION AND ORDER

into the RFC") (citing <u>Valentine v. Comm'r Soc. Sec. Admin.</u>, 574 F.3d 685, 691-92 (9th Cir. 2009); <u>Griffith v. Colvin</u>, 2014 WL 1303102, *5 n.3 (D.Or. Mar. 30, 2014)). Rather, in resolving conflicts in medical testimony and other ambiguities in the record, the ALJ reasonably determined that plaintiff was capable of "unskilled work of routine, repetitive tasks with simple instructions" and only "occasional contact with coworkers and the general public." Tr. 16; <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1156 (9th Cir. 2001).

Indeed, plaintiff's testimony detailed "no problems with authority figures." Tr. 183. She also reported that she socialized daily with a male friend, got along well with her neighbors, and had never been "fired or laid off from a job because of problems getting along with other people." Tr. 182-83, 438. Chart notes from multiple providers characterize her as "calm," "pleasant" and "cooperative." <u>See, e.g.</u>, Tr. 328, 419. This evidence supports the ALJ's finding that plaintiff is capable of responding appropriately to supervisors. <u>See</u> <u>Rogers v. Comm'r of Soc. Sec. Admin.</u>, 490 Fed.Appx. 15, 17-18 (9th Cir. 2012) (affirming the ALJ's decision where "the ALJ found that, despite Rogers's moderate difficulties in social functioning, Rogers did not have significant limitations in any concrete work-related abilities that would prevent her from performing simple routine tasks involved in unskilled jobs").

Moreover, contrary to plaintiff's assertion, the ALJ did include a limitation reflecting her moderate impairment in understanding, remembering, and carrying out complex instructions.

A claimant who is restricted to routine, repetitive, or simple tasks is, by definition, not performing complex work. In other words, by limiting plaintiff to "unskilled work of routine, repetitive tasks with simple instructions," the ALJ adequately translated Dr. Wahl's moderate restriction in this category into a concrete functional limitation. See Sabin v. Astrue, 337 Fed.Appx. 617, 620-21 (9th Cir. 2009) (ALJ did not err in determining that, despite moderate difficulties in concentration, persistence, or pace, the claimant could perform "simple and repetitive tasks on a consistent basis"). In fact, Dr. Wahl expressly opined that plaintiff was not limited in her ability to "[u]nderstand and remember simple instructions," "[c]arry out simple instructions," and "make judgments on simple work-related decisions." Tr. 432. He further indicated that plaintiff was only mildly restricted in her "ability to make judgments on complex work related decisions." Id. Plaintiff's ability to do homework with her daughter and complete genealogy research online reinforces both Dr. Wahl's evaluation and the ALJ's RFC. Tr. 45-48, 438-39.

Thus, even assuming that the ALJ erred, such error was harmless because Dr. Wahl's medical testimony regarding plaintiff's functional abilities was indefinite and other evidence of record demonstrates that plaintiff is capable of performing work consistent with the RFC. See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (mistakes that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless). The ALJ's decision is upheld.

Page 13 - OPINION AND ORDER

III. <u>Medical Opinion Evidence</u>

Plaintiff contends the ALJ failed to provide legally sufficient reasons, supported by substantial evidence, for discrediting the opinions of Drs. Canfield and McAndrew. There are three types of medical opinions in social security cases: those from treating, examining, and non-examining doctors. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons for doing so. <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. <u>Id.</u>

A.  <u>Dr. Canfield</u>

In September 2009, plaintiff initiated care with Dr. Canfield for treatment of her psychiatric symptoms. Tr. 337-39. Dr. Canfield treated plaintiff on a monthly basis from September 2009 until the doctor left the area in August 2010. Tr. 306-58, 429, 439. In October 2009, Dr. Canfield diagnosed plaintiff with PTSD and major depressive disorder, recurrent but in partial remission, and placed her on short-term disability. Tr. 331-33, 384. On a workers compensation form, dated May 2010, Dr. Canfield placed plaintiff on long-term disability, stating "it's very difficult for [her] to continue full time employment" due to her major depressive disorder and PTSD, and it "was surprising she had been able to function as long as she ha[d]." Tr. 381. From June 2010 through August 2010,

Dr. Canfield completed four additional insurance forms, reiterating plaintiff's diagnoses of PTSD and depression, and continuing to find her disabled, although noting "there is some improvement." Tr. 363, 365, 368, 374, 371, 377, 379.

The ALJ discounted Dr. Canfield's opinion because, while he concluded in 2010 that plaintiff "was unable to work," he nevertheless "assessed GAF scores in the 50s, indicative of moderate limitations and symptomatology." Tr. 18. The ALJ went on to note that plaintiff's "[m]ost recent psychiatrist, Dr. Ferguson-Wilcox, regularly assigned GAF scores in the 60s, consistent with mild symptoms and limitations, and never lower than the mid-50s[,] and as recently as November 2011 concluded that [plaintiff's] depression was in partial remission . . . [t]his assessment is supported by the findings of consultive examiner Dr. Wahl." Id. In other words, the ALJ rejected Dr. Canfield's disability opinion because it was inconsistent with the doctor's contemporaneous chart notes, as well as plaintiff's history of medical improvement.

An ALJ "need not accept a medical opinion that is inconsistent with the doctor's own chart notes." Hogan v. Colvin, 2014 WL 1744999, *6 (D.Or. Apr. 30, 2014) (citing Bayliss, 427 F.3d at 1216). In addition, recent medical reports are the most probative. Osenbrock v. Apfel, 240 F.3d 1157, 1165 (9th Cir. 2001).

The record before the Court supports the ALJ's rejection of Dr. Canfield's disability opinion. An independent review of Dr. Canfield's chart notes reflect that multiple situational stressors, such as the "death of a long-term" friend and a pending divorce,

were "exacerbating [plaintiff's] depression." Tr. 357. Likewise, in January 2010, Dr. Canfield remarked that, while plaintiff "stated her mood remains 'a little depressed,' [she] attribute[d] it to most of the psychosocial stressors that are going on." Tr. 323. At that time, plaintiff was working "half-time and she is interested in going up to working six hours per day as early as next week." Id. Yet, one month later, Dr. Canfield opined that plaintiff was totally disabled, despite the fact that he assigned her GAF scores between 55 and 60, which are indicative of no more than moderate symptoms or limitations. Tr. 363, 368, 374-79, 382-88, 419, 424-25, 433-39, 449, 465; see also Keyser v. Comm'r. Soc. Sec. Admin., 648 F.3d 721, 727 (9th Cir. 2011) (a GAF score "of 55 to 65 . . . indicates mild to moderate symptoms"). Accordingly, Dr. Canfield's prior chart notes, including his GAF scores, reflect that plaintiff's mental health conditions were not as limiting as articulated in his disability opinions.

Furthermore, plaintiff's more recent medical sources routinely recorded an improvement in symptoms after she ceased treatment with Dr. Canfield in August 2010. Nurse practitioner Kristine Reimer noted in September 2010 that plaintiff's "anxiety . . . is better than it has been in the past as she finalized her divorce." Tr. 429. In August 2011, plaintiff underwent her assessment with Dr. Wahl and, in September 2011, she transferred her psychiatric care to Dr. Wilcox. Tr. 419-29. As the ALJ observed, both Dr. Wilcox and Dr. Wahl opined that plaintiff was capable of performing work consistent with the RFC. Tr. 18, 419-29, 432-34, 436-40; see also

Page 16 - OPINION AND ORDER

Osenbrock, 240 F.3d at 1165 (relying on the claimant's "most recent medical evaluations" to determine that his "depression [w]as a mild impairment"). For these reasons, the ALJ's assessment of Dr. Canfield's opinion is affirmed.

B.    Dr. McAndrew

In 1997, plaintiff established care with Dr. McAndrew, however, the earliest chart note in the record from Dr. McAndrew is dated February 2009. Tr. 254. Dr. McAndrew saw plaintiff approximately once per month for treatment of her fibromyalgia and other physical impairments, although he occasionally prescribed medication for her mental health conditions during intermittent gaps in her psychiatric coverage. Tr. 225-59, 418, 450, 467-71. In July 2011, Dr. McAndrew completed a check-the-box form prepared by plaintiff's attorney. Tr. 452-57. The doctor diagnosed plaintiff with depression, PTSD, fibromyalgia, and migraine headaches. Tr. 452. He concluded that plaintiff "has been unable to work for the last 18-24 months." Tr. 453. Dr. McAndrew indicated that his opinion was based on Dr. Canfield's reports and clinical observations. Tr. 453, 457.

The ALJ "assigned no weight" to Dr. McAndrew's opinion because the doctor "really [did] not include any physical limitations or anything directly attributable to fibromyalgia" and his chart notes "characterize [plaintiff] as stable on her current treatment regimen." Tr. 18.

An ALJ may "permissibly reject . . . check-off reports that [do] not contain any explanation of the bases of their

Page 17 - OPINION AND ORDER

conclusions." <u>Crane v. Shalala</u>, 76 F.3d 251, 253 (9th Cir.1996); <u>see also</u> <u>Thomas</u>, 278 F.3d at 957 (ALJ "need not accept [a medical] opinion [that] is brief, conclusory, and inadequately supported by clinical findings"). Similarly, an ALJ may disregard a medical opinion that neglects to explain the "extent or significance" of a condition. <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1114 (9th Cir. 1999). More weight is also afforded "to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1202 (9th Cir. 2001) (citations omitted).

Substantial evidence supports the ALJ's rejection of Dr. McAndrew's brief and conclusory opinion. Namely, Dr. McAndrew based his opinion entirely on the properly disregarded assessment of Dr. Canfield; as discussed above, more recent reports from Drs. Wilcox and Wahl evince that plaintiff's mental health conditions improved after the alleged onset date, to the point where plaintiff felt that she no longer needed counseling. Tr. 420, 439. Further, Dr. McAndrew is not a psychiatrist and his treatment of plaintiff was limited primarily to fibromyalgia. Tr. 225-59, 450, 467-71. Nonetheless, his disability opinion focused on plaintiff's mental health and did not emphasize fibromyalgia as a disabling condition. Tr. 453-57. Finally, consistent with the other evidence of record, Dr. McAndrew's chart notes from September 2011 reflect that plaintiff's symptoms were stable with medication. Tr. 468. The ALJ's evaluation of the medical opinion evidence is upheld.

IV.  <u>Step Five Finding</u>

Page 18 - OPINION AND ORDER

Lastly, plaintiff contends that the ALJ's step five finding was erroneous in two respects. First, she asserts that the VE's testimony was inconsistent with the Dictionary of Occupational Titles ("DOT") because a job requiring a GED Reasoning Level of "Two" is inconsistent with the ALJ's limitation to simple, routine work. Second, plaintiff argues that, because the ALJ's RFC failed to account for limitations identified in her subjective symptom statements, as well as the medical opinions of Drs. Wahl, Canfield, and McAndrew, the VE's testimony was invalid.

A.    Inconsistency with the DOT

The DOT is presumptively authoritative regarding job classifications, but that presumption is rebuttable. Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). "[A]n ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." Id. Before he or she may rely on the VE's testimony, an ALJ "must first determine whether a conflict exists." Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007). In accordance with Social Security Ruling 00-4p, the ALJ must ask the VE if his or her testimony is consistent with the DOT. Id. at 1152-53. If there is no conflict between the VE's testimony and the DOT, "or if the vocational expert had provided sufficient support for her conclusion so as to justify any potential conflicts," the ALJ's step five finding must be upheld. Id. at 1153-54; SSR 00-4p, available at 2000 WL 1898704.

At the hearing, the ALJ asked the VE to assume a hypothetical individual of the same age, education, and work experience as

plaintiff, with the ability to "lift 20 pounds occasionally and 10 [pounds frequently]," "handl[e] with the left hand [frequently]," "stand and walk for up to six hours and sit for up to six hours" in an eight-hour work day, and perform "unskilled work [with] routine, repetitive tasks [and] simple instructions" and "occasional contact both with the general public and coworkers." Tr. 57-59. The VE responded that such an individual could perform the representative occupations of clerical addresser, officer helper, and credit clerk, and indicated further that his testimony was consistent with the DOT. Tr. 60, 65. The positions of clerical addresser and officer helper both require a GED Reasoning Level of Two, which necessitates the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and] [d]eal with problems involving a few concrete variables in or from standardized situations."[1] DOT, Appx. C, <u>available at</u> 1991 WL 688702.

Here, no conflict exists between the VE's testimony and the DOT, such that the ALJ discharged his duty under Social Security Ruling 00-04p. Tr. 65. While the Ninth Circuit has not directly addressed this issue, several courts within this District have held that "a claimant who is limited to 'simple, routine tasks and

---

[1] The DOT description of credit clerk requires a GED Reasoning Level of Three. DOT § 205.367-018. Because plaintiff's argument on appeal focuses on the jobs requiring a GED Reasoning Level of Two, and because 9,050 regional and 567,000 national office helper and clerical addresser positions exist, the Court declines to consider the representative occupation of credit clerk in determining whether the ALJ met his burden at step five. <u>See</u> <u>Bergman v. Astrue</u>, 2012 WL 1357667, *4 (D.Or. Apr. 19, 2012).

instructions' is capable of performing a job requiring Level Two reasoning." <u>Patton v. Astrue</u>, 2013 WL 705909, * 1 (D.Or. Feb. 25, 2013); <u>Delatorre v. Colvin</u>, 2013 WL 6284389, *6 (D.Or. Dec. 3, 2013); <u>Gottschalk v. Colvin</u>, 2014 WL 1745000, *4-6 (D.Or. May 1, 2014); <u>see also</u> <u>Abrew v. Astrue</u>, 303 Fed.Appx. 567, 569-570 (9th Cir. 2008) ("there was no conflict between the ALJ's step five determination that [the claimant] could complete only simple tasks and the [VE]'s testimony that [the claimant] could do jobs that the U.S. Department of Labor categorizes at 'Reasoning Level 2'"). The Court finds these cases persuasive and adopts their reasoning as its own. The Court also finds that the tasks contemplated in the DOT descriptions for the jobs of clerical addresser and officer helper are consistent with plaintiff's RFC; nothing in these descriptions contemplates complex instructions or tasks beyond plaintiff's functional abilities. <u>See</u> DOT §§ 209.587-010, 239.567-010. Accordingly, the ALJ did not err in regard to this issue.

B.   <u>Incomplete RFC</u>

The RFC is the maximum a claimant can do despite her limitations. 20 C.F.R. § 404.1545. In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p, <u>available at</u> 1996 WL 374184. Only limitations supported by substantial evidence shall be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. <u>Osenbrock</u>, 240 F.3d at 1163-65.

Page 21 - OPINION AND ORDER

As discussed above, the ALJ properly evaluated plaintiff's subjective symptom statements and the opinions of Drs. Wahl, Canfield, and McAndrew. Plaintiff's argument, which is contingent upon a finding of harmful error in regard to the aforementioned issues, is without merit. <u>Bayliss</u>, 427 F.3d at 1217-18; <u>Stubbs-Danielson</u>, 539 F.3d at 1175-76. The ALJ's RFC and step five findings are affirmed.

### CONCLUSION

The Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

Dated this _20th_ day of October 2014.

_____
Ann Aiken
United States District Judge

Page 22 - OPINION AND ORDER